IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KERRI LYNN HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-21-229-SM |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **ACTING COMMISSIONER** ) | |
| **OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kerri Lynn Harris brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 11, 13.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge's (ALJ) residual functional capacity[1] (RFC) assessment is unsupported by substantial evidence; his consistency findings are unsupported by substantial evidence, and that he erred at step five of his analysis. Doc. 14, at

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a)(1).

4. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.  Administrative determination.

### A.  Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.  Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work

---

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

2

activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id*.

**C.  Relevant findings.**

**1.  Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-18; *see* 20 C.F.R. § 404.1520(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)  had not engaged in substantial gainful activity since June 18, 2018, the alleged onset date;

(2)  has the following severe impairments: spine disorders, lumbar and thoracic spondylosis, obesity, depressive disorder, personality disorder, and anxiety disorder;

(3)  has no impairment or combination of impairments that meet or medically equal the severity of a listed impairment;

(4)  had the RFC to perform sedentary work, with the following limitations: she cannot climb ladders, ropes, or scaffolds and cannot stoop; she can crouch, crawl, kneel, balance, and climb ramps or stairs occasionally; she can understand, remembers, and carry out simple or intermediate level instructions, and perform simple and some tasks of

> intermediate level under routine supervision such that she can do simple or semiskilled work; she can relate to supervisors and coworkers on a superficial and work-related basis and can adapt to a work situation; she should not work at jobs where changes in work routine occur on a regular basis, or where changes in work routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust; and she can have occasional contact with the general public;

(5)   cannot perform any past relevant work;

(6)   can perform jobs that exist in significant numbers in the national economy, such as document preparer, semiconductor binder, and touch up cleaner; and so,

(7)   was not under a disability from June 18, 2018, through September 17, 2020.

*See* AR 12-24.

### 2.   Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.   Judicial review of the commissioner's decision.

### A.   Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the

4

ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

    **B.**     **Issues for judicial review.**

Plaintiff claims: (1) substantial evidence does not support the ALJ's RFC assessment, Doc. 14, at 4-8; (2) "[t]he ALJ's consistency findings are [erroneous] as a matter of law and not supported by substantial evidence," *id.* at 9-12; and (3) "[t]he ALJ failed to follow vocational expert witness testimony that was favorable to" her, *id.* at 12-14. The Court disagrees with Plaintiff's assertions.

    **1.**     **Substantial evidence supports the ALJ's RFC assessment.**

Plaintiff argues substantial evidence is lacking, asserting the ALJ gave insufficient weight to Plaintiff's complex medical treatment, her testimony,

and treating physician Dr. Clinton Anthony's opinion that she could not work and was "a good candidate for disability." Doc. 14, at 5. Plaintiff maintains "the bottom-line issue" was the ALJ's ignoring Dr. Anthony's "opinion of disability." *Id.* at 6.

During a July 29, 2020 visit to Dr. Anthony, his notes under "PLAN" reads in part:

> She is trying to apply for disability and I believe that she is disabled. I do not believe that she can work. Hopefully in the future this can be resolved but for now my opinion is that she is a good candidate for disability.

AR 455.

Effective March 27, 2017, the SSA's revised regulations provide that particular evidence, including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements pertaining to issues reserved to the Commissioner, is "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled". 20 C.F.R. § 404.1520b(c). The applicable regulations specifically explain that "[s]tatements that you are or are not disabled" are statements on an issue reserved for the Commissioner and are deemed "[e]vidence that is inherently neither valuable nor persuasive." *Id.* Thus, the SSA "will not provide any analysis about how we considered such evidence in our determination or

decision." *Id.; see also Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) ("An opinion is not a 'medical opinion' if it is about an issue reserved to the Commissioner.") (applying previous regulations).

The Court agrees with the Commissioner that statements about a plaintiff's being disabled "are statements on an issue reserved" for her to determine. Doc. 18, at 10. Instead, an ALJ evaluates medical opinions, which are statements about the ability to perform specific functions (i.e., sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions.). *Id.* (citing 20 C.F.R. § 404.1513(a)(2)). Dr. Anthony provided no such statement.

But, as the ALJ noted, during the same visit, Dr. Anthony observed Plaintiff had "undergone successful radiofrequency ablation and the right side of the lower back was 'doing quite well.'" *Id.* at 5 (quoting AR 453). She was no longer taking any opioids for pain relief and "us[ed] only a Butrans patch for pain, which provided 'good benefit' . . . ." *Id.* (quoting AR 19). Her "[n]eurological examination offered no evidence of active thoracic or lumbar radiculopathy." *Id.*; *see also* AR 19, 454.

The ALJ did consider the actual medical opinions in the record. He found partially persuasive the state medical examiners' opinions, agreeing that their

7

conclusions limiting Plaintiff to sedentary work were supported by the objective medical evidence and were "consistent with the record showing mild findings on thoracic." AR 21. The ALJ imposed even greater limitations than those recommended by these physicians, as he found that "at least some continuing back pain and range of motion limitations in combination with obesity warrants greater postural limitations than what [those doctors] provided." *Id.* at 22.

The ALJ arrived at the RFC assessment after considering Plaintiff's hearing testimony, her treatment history, the objective medical evidence, and the medical source opinion. *See id.* at 21-25. To the extent that Plaintiff rattles off several other conclusory and undeveloped arguments, *see* Doc. 14, at 7, the Court declines to address them. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review.").

### 2. The ALJ applied the correct legal standards in assessing Plaintiff's consistency, and substantial evidence supports his findings.

Plaintiff maintains "[t]he ALJ's consistency analysis is directly contrary to law." Doc. 14, at 9. The ALJ summarized Plaintiff's testimony and then made these findings relating to Plaintiff's consistency:

8

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 16-17.

The ALJ determined that Plaintiff's spine disorders and other medically determinable impairments "could reasonably be expected to cause the alleged symptoms." *Id.* at 17; see SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.").

The ALJ's next step was to determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were consistent with the objective medical evidence, statements from medical sources, or any other sources who might have information about her symptoms. SSR 16-3p, 2017 WL 5180304, at *6; *see* AR 17-22. Additional factors for the ALJ to consider were: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness,

9

and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). Statements the ALJ finds inconsistent with all the evidence will lead to a determination that "the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Provided the ALJ links his assessment of Plaintiff's consistency to specific evidence in the record, this Court affords substantial deference to the ALJ's determination. *See. e.g.*, *Keyes-Zachary*, 695 F.3d at 1167 ("But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))). "[C]ommon sense, not technical perfection," is this Court's guide. *Id.*

The ALJ reviewed the objective medical record and considered Plaintiff's reports of debilitating symptoms. AR 17-22. She testified the "main cause" of her pain was the pain stemming from her "thoracic back." AR 51. The ALJ reviewed the medical record showing:

- a February 2018 MRI that showed mild thoracic spine with mild facet arthropathy;

- full range of motion in the thoracic and lumbar spine (April 2018);

- some decreased range of motion in lumbar spine, with tenderness, swelling, pain and spasms, and prescribed Zanaflex (September 2018);

- that she could sit and move around without any objective indication of pain or discomfort (October 2018);

- reduced range of motion and tenderness and pain in the lumbar spine (October 2018);

- muscle spasm and tenderness in the thoracic and lumbar spine (July 2019);

- improvement on Zoloft and increased Gabapentin to address worsening back pain (September and October 2019);

- Dr. Christopher Covington reported her MRIs did "not really show anything" and there was "simply nothing there" but referred Plaintiff for injection therapy to address tenderness with radiation to about T6 (October/November 2019);

- Dr. Anthony reported Plaintiff was "doing quite well," after thoracic injections and he encouraged exercise and recommended lumbar injections (January 2020);

11

- Administration of facet blocks in February 2020; increased Gabapentin and Zoloft to address reports of increased pain and depression (February 2020);

- Plaintiff reported thoracic injections not helping and lumbar injections were providing relief; tightness in the left upper trapezius and significant myofascial pain along the medial scapular border with decreased rotation to the left; cervical MRI ordered; lumbar spine "doing very well," Tramadol change to long-acting (March 2020);

- Facet blocks administered (April 2020); and

- Successful radiofrequency ablation noted on the right-side lower back was "doing quite well," Butrans patch provided "good benefit," Tramadol had been discontinued; neurological examination showed no active thoracic or lumbar radiculopathy; physical therapy had been interrupted but Dr. Anthony advised to resume (July 2020).

In discounting her consistency, the ALJ looked to Dr. Covington's comments about Plaintiff's MRI's "not really show[ing] anything." *Id.* at 19. Also, Dr. Anthony noted successful thoracic injections and that she was doing well. *Id.* Although the next rounds of injections did not help, according to Plaintiff, Dr. Anthony found no evidence of active radiculopathy. *Id.* His treatment regimen was conservative, consisting of only a Butrans patch that provided "good benefit" and physical therapy. *Id.* at 19-20.

The Court can capably review the ALJ's decision on Plaintiff's consistency and finds his discussion of Plaintiff's reported pain and limitations

from her thoracic and lumbar spine was adequate based on the record as a whole. The Court also finds that substantial evidence supports the ALJ's consistency finding.

### 3. The ALJ did not commit step-five error.

Plaintiff next assails the ALJ's "proper[] develop[ment of] the vocational testimony in this case," which led to an improper RFC. Doc. 14, at 12. The ALJ asked two hypotheticals of the vocational expert. AR 67-69. The second contained greater limitations than did the first. *See id.* The ALJ incorporated the first hypothetical into the RFC assessment, which Plaintiff acknowledges. Doc. 14, at 12; AR 15-16. The Court agrees the ALJ did not need to incorporate additional limitations he did not ultimately assess. Doc. 18, at 14 (citing *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("[Plaintiff] argues that the administrative law judge understated [plaintiff's] limitations when posing hypothetical questions to the vocational expert. We reject this contention. *The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.*" (emphasis added) (citing *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995)).

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 28th day of February, 2022.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

14